AO 241
Rev. (01/15)

Page 1

PROVIDED TO
SUMTER CORRECTIONAL INSTITUTION
DATE 4-3-23
OFFICER INITIALS

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
### HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court: | District: MIDDLE DISRICT OF FLORIDA | |
|---|---|---|
| Name (under which you were convicted): <br><br> ROBERT EARL THOMAS | | Docket or Case No: <br><br> 8:23cv748 KKm-JSS |
| Place of Confinement: <br><br> Sumter Correctional Institution <br> 9544 County Road 476-B <br> Bushnell, Florida 33513 | Prisoner No.: <br><br> T35275 | |

| Petitioner (include the name under which you were convicted) <br> Robert Earl Thomas <br><br><br> v. | Respondent (Authorized Person Having Custody Of Petitioner) <br> Ricky Dixon, Secretary, Florida Department Of Corrections 501 S. Calhoun Street. Tallahassee, Florida 32399- |
|---|---|
| The Attorney General of the State of: Florida: ASHLEY MOODY | |

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Circuit Court, Thirteenth Judicial Circuit, Hillsborough County, 800 Twiggs Street Tampa, Florida 33602

    (b) Criminal docket or case number (if you know): 13-CF-013251

2.  (a) Date of the judgment of conviction (if you know): May 7,2015

    (b) Date of sentencing: June 29, 2015

3.  Length of sentence: Forty (40) years in prison followed by ten (10) years probation on count one(I) .

4.  In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☑ No

5.  Identify all crimes of which you were convicted and sentenced in this case: Second Degree Murder

6.  (a) What was your plea? (Check one)

    | | | | | | |
    |---|---|---|---|---|---|
    | ☑ | (1) | Not Guilty | ☐ | (3) | Nolo Contendere (no contest) |
    | ☐ | (2) | Guilty | ☐ | (4) | Insanity Plea |

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury      ☐ Judge Only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?:

☐ Yes      ☑ No

8.   Did you appeal from the judgment of conviction?:

☑ Yes      ☐ No

9.   If you did appeal, answer the following:

(a) Name of court:  District Court of Appeal, Second District

(b) Docket or case number (if you know): 2D15-2973

(c) Result: Per curiam affirmed w/o written opinion

(d) Date of result (if you know): May 12, 2017

(e) Citation to the case (if you know): Thomas v State 226 So 3d 834 (Fla. 2 DCA 2017)

(f) Grounds raised:  Unknown

(g) Did you seek further review by a higher state court?      ☐ Yes      ☑ No

If yes, answer the following:

(1)   Name of court: _____

(2)   Docket or case number (if you know): _____

(3)   Result : _____

AO 241
Rev. (01/15)

4. Date of result (if you know): _____

5. Citation to the case (if you know): _____

6. Grounds raised: _____

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

Concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: Circuit Court. Thirteenth Judicial Circuit, Hillsborough County, Tampa, Florida

(2) Docket or case number (if you know): 13-CF-013251-A

(3) Date of filing (if you know): October 6, 2017

(4) Nature of the proceeding: Motion for Post-conviction Relief (Fla. R. Crim. P. 3.850)

(5) Grounds raised: (I).Defense counsel rendered ineffective assistance by failing to investigate and file a pretrial motion for immunity under the stand your ground law.(II).Failing to insist that Mr. Thomas testify on his own behalf.(III).Failing to object to the jury being provided incomplete jury instructions on justifiable use of deadly force.(IV).Failing to argue the application of justifiable use of force during closing arguments.(V).Failing to investigate and call an expert witness on behalf of the defense to rebut the State's medical examiner's trial testimony.(VI).Failing to present an alternative theory of defense.(VII).Mr. Thomas should be entitled to a new trial based on the cumulative effect of ineffective assistance of counsel.(VIII). Defense counsel rendered ineffective assistance by using inadequate strategy attack. (IX). **Defendant's constitutional right to the effective assistance of counsel as defined in Strickland v Washington, 466 U. S. 668, 8o l. ed 2d 674, 104 S. Ct. 2052 was violated.**

(6)    Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes    ☐ No

(7)    Result: Denied Post-conviction relief _____

AO 241
Rev. (01/15)

        (8)    Date of result (if you know): June 22, 2021

(b) If   you filed any second petition, application, or motion, give the same information:

        (1)    Name of court: _____

        (2)    Docket or case number (if you know): _____

        (3)    Date of filing (if you know): _____

        (4)    Nature of the proceeding: _____

        (5)    Grounds raised: _____

              _____

              _____

              _____

              _____

              _____

              _____

              _____

              _____

              _____

        (6)  Did you receive a hearing where evidence was given on your petition, application, or motion?

        ☐ Yes          ☐No

        (7)  Result: _____

        (8)  Date of result (if you know): _____

(c)     If you filed any third petition, application, or motion, give the same information:

        (1) Name of court: _____

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding: _____

        (5) Grounds raised: _____

AO 241 (Rev 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☑ Yes    ☐ No

(2) Second petition:    ☐ Yes    ☐ No

(3) Third petition:    ☐ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: DEFNSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE FAILING TO INVESTIGATE AND FILE A PRETRIAL MOTION FOR IMMUNITY UNDER THE STAND YOUR GROUND LAW

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Prior to trial, Mr. Thomas made defense counsel aware of the details of his case and how he and Mr. Martin had an altercation. More precisely, Thomas advised counsel that on the night of the incident, he was at Mr. Martin's home drinking and hanging out. During the evening, Mr. Martin's daughter stopped in for a few minutes. Her demeanor and comments led Mr. Thomas to think she was racist.[1] When she left, Mr. Thomas expressed his feelings to Mr. Martin about his daughter. Mr. Thomas actually asked Mr. Martin if he had raised his daughter to be racist. Mr. Martin said, "No." Mr. Thomas returned with, "Well, she acts like a racist bitch."

From there the discussion became heated back and forth between Mr. Thomas and Mr. Martin. Suddenly, Mr. Martin attacked Mr. Thomas from behind and began punching Mr. Thomas in the side of the face and head. Mr. Thomas fell

[1] Mr. Thomas is an African American, and Mr. Martin's daughter is white.

to the ground and ended up on his back while Mr. Martin was still punching and clawing at him.

Mr. Thomas did his best at trying to fend Mr. Martin off and stop the attack. The two rolled around until Mr. Thomas was able to get on top of Mr. Martin and slow him down a little. It appeared Mr. Martin was lightening up on his attack, leading Mr. Thomas to ease off and start to get up. As soon as Mr. Thomas began getting up, Mr. Martin again proceeded with his ruthless attack, once again leading Mr. Thomas to try to fend off from being punched and clawed. Ultimately, Mr. Thomas fought back and placed his hands around Mr. Martin's neck while Mr. Martin was still swinging and hitting Mr. Thomas and clawing away at his face and head.

Moments later, Mr. Martin slowed his attack again, leading Mr. Thomas to slack off, back away from Mr. Martin, and subsequently leave the home to prevent any further altercation. At the time, Mr. Thomas did not believe he had done anything to cause Mr. Martin's death. He was simply in reasonable fear for his life, or at least in reasonable fear of great bodily harm being inflicted upon himself. Accordingly, Mr. Thomas had a right to stand his ground and meet force with force, including deadly force, under the Stand Your Ground law.

Consequently, defense counsel should have investigated the case and developed the defense of filing a motion for immunity under the Stand Your Ground law.

## DEFICIENT PERFORMANCE AND PREJUDICE

Defense counsel's failure to move as alleged was deficient performance that prejudiced Mr. Thomas by denying him his substantive and procedural rights to have his charges dismissed based on the immunity under the Stand Your Ground law, effectively denying him his right to due process and a fair proceeding. Mr. Thomas is further prejudiced where he is now limited to making this argument as a pro se litigant. Obviously an experienced and trained attorney could prepare a better argument, with another trained attorney appealing any adverse rulings. Mr. Thomas was denied all that.

Had it not been for counsel's deficient performance, there exists a reasonable probability the outcome of the proceedings would have been different by the Court finding Mr. Thomas's unrebutted version of events required dismissal of the charges, obviously resulting in a different outcome, or the issue being preserved for appellate review. Accordingly, Mr. Thomas has established a legally sufficient basis for postconviction relief. As it stands, the verdict in this case has been undermined and an evidentiary hearing is warranted to resolve this claim.

AO 241
Rev. (01/15)

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

(c) **Direct Appeal of Ground One:**

  (1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☑No

  (2) If you did not raise this issue in your direct appeal, explain why: REPRESENTED by COURT APPOINTED

Attorney _____

_____

(d) **Post-Conviction Proceedings:**

  (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   ☑ Yes  ☐No

  (2) If your answer to Question (d)(1) is "Yes," state:

  Type of motion or petition: Motion for Post-conviction Relief (Fla. R. Crim. P. Rule 3.850)

  Name and location of the court where the motion or petition was filed: Circuit Court, Thirteenth Judicial Circuit, Hillsborough County, 800 Twiggs Street Tampa, Florida 33602 _____

  Docket or case number (if you know): 13-CF-013251-A _____

  Date of the court's decision: June 22, 2021 _____

  Result (attach a copy of the court's opinion or order, if available): See, Exhibit "A", attached _____

_____

| | | |
|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ☑ Yes | ☐No |
| (4) Did you appeal from the denial of your motion or petition? | ☑ Yes | ☐No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☑ Yes | ☐No |

  (6) If your answer to Question (d)(4) is "Yes," state:

  Name and location of the court where the appeal was filed: District Court of Appeal, Second District, Lakeland, Florida

  Docket or case number (if you know): 2D21-2178 (Thomas v State 226 So 3d 834 [Fla.2 DCA 2017])

  Date of the court's decision: December 2, 2022 and Mandated December 30,2022

  Result (attach a copy of the court's opinion or order, if available): See, Exhibit (s) "B" and "C", attached .

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:     N O N E _____

_____

---

GROUND TWO: DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BYFAILING TO INSIST THAT MR. THOMAS TESTIFY ON HIS OWN BEHALF

**(a) Supporting facts** (Do not argue or cite law. Just state the specific facts that support your claim.):

Prior to, and during trial, Mr. Thomas discussed some defense strategies with defense counsel. Mr. Thomas wanted to take the stand and testify in his own behalf to tell the jury his side of the story and exactly how the incident occurred. However, defense counsel led Mr. Thomas to believe his testimony was unnecessary and that counsel could create reasonable doubt in the State's case through cross-examining state witnesses, and through closing arguments. Obviously, defense counsel's advice was unreasonable when considering the verdict under review. In fact, when considering what Mr. Thomas would have testified to had he been properly advised that his testimony was vital in establishing a defense in this case, Mr. Thomas would have told the jury that on the night of the incident, he was at Mr. Martin's home drinking and hanging out. During the evening, Mr. Martin's daughter stopped in for a few minutes. Her demeanor and comments led Mr. Thomas to think she was racist. When she left, Mr. Thomas expressed his feelings to Mr. Martin about his daughter. Mr. Thomas actually asked Mr. Martin if he had raised his daughter to be racist. Mr. Martin said, "No." Mr. Thomas returned with, "Well, she acts like a racist bitch."

From there the discussion became heated back and forth between Mr. Thomas and Mr. Martin. Suddenly, Mr. Martin attacked Mr. Thomas from behind and began punching Mr. Thomas in the side of the face and head. Mr. Thomas fell to the ground and ended up on his back while Mr. Martin was still punching and clawing at him.

Mr. Thomas did his best at trying to fend Mr. Martin off and stop the attack. The two rolled around until Mr. Thomas was able to get on top of Mr. Martin and slow him down a little. It appeared Mr. Martin was lightening up on his attack, leading Mr. Thomas to ease off and start to get up. As soon as Mr. Thomas began getting up, Mr. Martin again proceeded with his ruthless attack, once again leading Mr. Thomas to try to fend off from being punched and clawed. Ultimately, Mr. Thomas fought back and placed his hands around Mr. Martin's neck while Mr. Martin was still swinging and hitting Mr. Thomas and clawing away at his face and head.

Moments later, Mr. Martin slowed his attack again, leading Mr. Thomas to slack off, back away from Mr. Martin, and subsequently leave the home to prevent any further altercation. At the time, Mr. Thomas did not believe he had done anything to cause Mr. Martin's death. He was simply in reasonable fear for his life, or at least the danger of great bodily harm being inflicted upon himself. Accordingly, Mr. Thomas's testimony would have legally established for the jury

how he had a right to stand his ground and meet force with force, including deadly force, under the Stand Your Ground law.

However, defense counsel's unreasonable advice to Mr. Thomas not to testify on his own behalf led him to choose to remain silent. After Mr. Thomas arrived to prison and began researching his case with applicable law, he realized just how deficient counsel's advice was on this material aspect of the case. This is a legally sufficient basis for postconviction relief.[1]

## DEFICIENT PERFORMANCE AND PREJUDICE

Defense counsel's failure to insist that Mr. Thomas take the stand and offer his factual version of the incident was deficient performance that prejudiced Mr. Thomas by denying him his substantive and procedural rights to testify on his own behalf and at least give the jury some evidence in rebuttal of the State's theory of prosecution, effectively denying him his right to due process and a fair trial.

Had it not been for counsel's deficient performance, there exists a reasonable probability the outcome of the proceedings would have been different by the jury having something to deliberate upon in support of a viable defense, resulting in an acquittal.

---

[1] See e.g., *Nelson v. State*, 126 So. 3d 1195 (Fla. 4th DCA 2012) (holding that misadvice regarding right to testify can be a ground for relief based on ineffective assistance of counsel if it wrongly prevented the defendant from testifying).

Accordingly, Mr. Thomas has established a legally sufficient basis for postconviction relief. As it stands, the verdict in this case has been undermined and an evidentiary hearing is warranted to resolve this claim.

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: REPRESENTED BY COURT APPOINTED

ATTORNEY _____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: MOTION FOR POST-CONVICTION RELIEF (FLA.R.Crim.A.RULE 3.850)

Name and location of the court where the motion or petition was filed: CircuiT courT, thirteenth JudiciAL

CircuiT HillsBoroogh CounTy 800 Twiggs STreet TAMPA FloridA 33602 _____

Docket or case number (if you know): 13-CF-13251-A

AO 241 (Rev. 09/17)

Date of the court's decision:  June 22, 2021

Result (attach a copy of the court's opinion or order, if available):  See, Exhibit "A" Attached

_____

_____

(3) Did you receive a hearing on your motion or petition?           ☑ Yes     ☐ No

(4) Did you appeal from the denial of your motion or petition?      ☑ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  District Court, Second District
Lakeland, Florida

Docket or case number (if you know):  2D21-2178

Date of the court's decision:  December 2, 2022

Result (attach a copy of the court's opinion or order, if available):  See, Exhibit "B" And "C"

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two :  None

_____

_____

GROUND THREE: DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE    JURY BEING PROVIDED INCOMPLETE JURY INSTRUCTIONS ON JUSTIFIABLE USE OF DEADLY FORCE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

As is apparent from opening statements and closing arguments in this case, the State's theory of prosecution was that Mr. Thomas strangled Mr. Martin to death in a violent manner, resulting in second-degree murder. In support, the State established that Mr. Thomas had been at Mr. Martin's home on the night of the incident, and that after law enforcement arrived, Mr. Thomas returned to the scene with visible cuts and scrapes, along with blood on his clothing.

The State also called two of Mr. Thomas's friends, Leroy Nelson and Stacy Mackabee, who testified that Mr. Thomas had told them he had been involved in a fight with Mr. Mintin on the night of the incident.

With evidence of Mr. Thomas's significant injuries coupled with Nelson and Mackabee's trial testimony, the Court agreed to provide the jury with self-defense instructions on justifiable use of deadly force. In fact, that was Mr. Thomas's only viable defense to the charged crime.

In regard to justifiable use of deadly force, the jury was instructed with:

> An issue in this case is whether Robert Thomas acted in self defense. It is a defense to the offense with which he is charged and any lesser offense if the death of [the victim] resulted from his justifiable use of deadly force. Deadly force means force which is likely to cause death or great bodily harm.

> The use of deadly force is justifiable only if Robert Thomas reasonably believed that such force is necessary to prevent imminent death or great bodily harm to himself while resisting: One, another's attempt to murder him, or, two, any intent to commit felony battery upon him. Felony battery is defined as intentionally striking another person against his will and causing great bodily harm, permanent disability, or permanent disfigurement.

> In deciding whether Robert Thomas was justified in using deadly force, you must judge him by the circumstances by which he was surrounded at the time he used the force. The danger facing him need not have been actual, however, to justify using deadly force, the appearance of danger must have been so great - - so real that a reasonably cautious and prudent person under the same circumstances would have believed the danger could be avoided only by using that force.

> Based on appearances he must have actually believed that the danger was real.

Mr. Thomas contends the foregoing instruction was inaccurate, confusing, misleading and effectively deprived him of his sole viable defense where the

reading of the instruction was incomplete on a material issue. Precisely, when

reading the instruction, the trial court left out the most vital part:

> If Mr. Thomas was not engaged in any unlawful activity
> and was attacked in any place where he had a right to be, he
> had no duty to retreat and had the right to stand his ground
> and meet force with force, including deadly force, if he
> reasonably believed that it was necessary to do so to prevent
> death or great bodily harm to himself, or to prevent the
> commission of a felony battery.

See Fla. Stand. Jury Inst. 3.6(f).

Leaving the foregoing out of Mr. Thomas's self-defense instructions was

highly prejudicial when taking into consideration the fact that the State highly

contested Mr. Thomas's theory of justifiable use of deadly force by arguing to the

jury that he could have retreated from the scene when the altercation between he

and Mr. Martin began.

In sum, the State was able to gain a conviction in this case by convincing the

jury that Mr. Thomas should have retreated, when, under applicable law, the theory

of justifiable use of deadly force does not require that Mr. Thomas had the duty to

retreat as long as he was not engaged in an unlawful activity and was attacked in

any place where he had a right to be.

What it amounts to is the incomplete reading of the justifiable use of deadly

force instructions in this case prevented the jury from deliberating upon the fact

that Mr. Thomas had no duty to retreat, and had the right to stand his ground and

meet force with force, including deadly force, if he reasonably believed it was necessary to do so to prevent death or great bodily harm to himself, or to prevent the commission of a felony battery upon himself.

Accordingly, defense counsel should have realized the instruction was incomplete and objected to its inaccuracy in order to prevent Mr. Thomas from being deprived of his sole defense at trial.

## DEFICIENT PERFORMANCE AND PREJUDICE

Defense counsel's failure to object was deficient performance that prejudiced Mr. Thomas by denying him his substantive and procedural rights to have his jury properly instructed on the sole defense offered at trial, effectively denying him his right to due process and a fair trial.

Had it not been for counsel's deficient performance, there exists a reasonable probability the outcome of the proceedings would have been different by the jury being properly instructed, resulting in them deliberating upon a lawful defense, ensuing in an acquittal, or the issue being preserved for appellate review.

Accordingly, Mr. Thomas has established a legally sufficient basis for postconviction relief. As it stands, the verdict in this case has been undermined and an evidentiary hearing is warranted to resolve this claim.

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

_____

_____

_____

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes   ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: Represented by court Appointed Attorney

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion FOR PostConviction relief (Fla.R.crim.P. Rule 3.850)

Name and location of the court where the motion or petition was filed: Circuit court Thirteenth Judicial Circuit, Hillsborough County, 800 Twiggs street TAMPA Florida 33602

Docket or case number (if you know): 13-CF-013 251-A

Date of the court's decision: June 22, 2021

Result (attach a copy of the court's opinion or order, if available): See, Exhibit "A" Attached

_____

(3) Did you receive a hearing on your motion or petition?    ☒ Yes   ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☒ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☒ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: District court, Second District LakeLand, Florida

Docket or case number (if you know): 2D21-2178

Date of the court's decision: December 2, 2022

Result (attach a copy of the court's opinion or order, if available): See, Exhibit "B" And "C"

_____

_____

_____

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
       have used to exhaust your state remedies on Ground Three:  none _____

       _____

**GROUND FOUR:** DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY
FAILING TO ARGUE THE APPLICATION OF JUSTIFIABLE USE OF FORCE DURING
CLOSING ARGUMENTS

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

As previously mentioned, it is apparent from opening statements and closing
arguments in this case that the State's theory of prosecution was Mr. Thomas had
strangled Mr. Martin to death in a violent manner, resulting in second-degree
murder.  In support, the State established that Mr. Thomas had been at Mr.
Martin's home on the night of the incident, and that after law enforcement arrived,
Mr. Thomas returned to the scene with visible cuts and scrapes, along with blood
on his clothing.

The State also called two of Mr. Thomas's friends, Leroy Nelson and Stacy
Maclabee, who testified that Mr. Thomas had told them he had been involved in a
fight with Mr. Martin on the night of the incident.

With evidence of Mr. Thomas's significant injuries coupled with Nelson and
Maclabee's trial testimony, the Court agreed to provide the jury with self-defense
instructions on justifiable use of deadly force. In fact, that was Mr. Thomas's only
viable defense to the charged crime.

However, during closing arguments, defense counsel failed to be familiar
with the law and advise the jury that Mr. Thomas had no duty to retreat and had the

right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself, or to prevent the commission of a felony battery. Nowhere in closing arguments did defense counsel make any such argument, leaving the jury with the misunderstanding that the defense of justifiable use of deadly force was inapplicable because, like the State so clearly argued, Mr. Thomas should have retreated.

Accordingly, defense counsel should have realized the State's argument was misleading on the sole defense offered at trial and then placed emphasis on the fact that Mr. Thomas had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself, or to prevent the commission of a felony battery.

## DEFICIENT PERFORMANCE AND PREJUDICE

Defense counsel's failure to move as alleged was deficient performance that prejudiced Mr. Thomas by denying him his substantive and procedural rights to have the jury properly informed on the application of the sole defense offered at trial, effectively denying him his right to due process and a fair trial.

Had it not been for counsel's deficient performance, there exists a reasonable probability the outcome of the proceedings would have been different

by the jury gaining an understanding on the application of justifiable use of deadly

force, resulting in an acquittal based on Mr. Thomas legally defending himself.

Accordingly, Mr. Thomas has established a legally sufficient basis for

postconviction relief. As it stands, the verdict in this case has been undermined

and an evidentiary hearing is warranted to resolve this claim.

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: REpRESENTED by court appointed

AttorNEy

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: MOTION FOR POST-CONVICTION RELIEF (FLA. R. CRIM. P. RULE 3.850)

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: Circuit Court, Thirteenth Judicial Circuit, Hillsborough County, 800 Twiggs Street, Tampa, Florida 33602

Docket or case number (if you know): 13-CF-013251-A

Date of the court's decision: June 22, 2021

Result (attach a copy of the court's opinion or order, if available):

_____

_____

(3) Did you receive a hearing on your motion or petition?                    ☒ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?              ☒ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: District Court, Second District Lakeland, Florida

Docket or case number (if you know): 2D21-2178

Date of the court's decision: December 2, 2022

Result (attach a copy of the court's opinion or order, if available): See, Exhibit "B" And "C"

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

_____

(e)    Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: None

_____

_____

_____

_____

_____

GROUND FIVE: DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO INVESTIGATE AND CALL AN EXPERT WITNESS ON BEHALF OF THE EXAMINER'S TRIAL TESTIMONY

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

As previously alleged, the State's theory of prosecution in this case was that Mr. Thomas strangled Mr. Martin to death in a violent manner, resulting in second-degree murder. In support, the State established that Mr. Thomas had been at Mr. Martin's home on the night of the incident, and that after law enforcement arrived, Mr. Thomas returned to the scene with visible cuts, scrapes, and blood on his clothing.

Additionally, the State called the medical examiner who performed the autopsy on Mr. Martin. It was the medical examiner's opinion that Mr. Martin could have lost consciousness within 10-15 seconds from being strangled. The medical examiner further opined that it would have taken between 3-6 minutes of strangulation for Mr. Martin to have actually died from strangulation.

As seen throughout closing arguments, to support a finding of guilt the State relied heavily on the medical examiner's trial testimony of it taking between 3-6 minutes for Mr. Martin to have died from Mr. Thomas's alleged strangulation. In fact, during closing arguments, the State even sat in silence for a matter of minutes to get the point across to the jury just how long it would have purportedly taken for Mr. Thomas to kill Mr. Martin through strangulation, which strongly indicated a finding of guilt to at least some degree of murder.

In sum, over and over the State mentioned throughout closing arguments that it would have taken 3-6 minutes for Mr. Martin to have died from Mr.

Thomas's alleged strangulation. The verdict shows the jury was convinced of guilt through the State's closing arguments and tactics.

Mr. Thomas now contends that defense counsel should have investigated and called an expert witness for the defense to rebut the State's medical examiner's trial testimony. Under the facts of this case, especially with Mr. Martin's poor health being added into the equation, a defense expert would have testified that it could have taken a considerable lesser amount of time for Mr. Martin to have died than the 3-6 minutes the State continuously argued to the jury during closing arguments. In fact, a defense witness would have testified that under certain circumstances, such as an obstructed carotid vein, it could take less than two minutes to cause death through strangulation, and moreover, when considering Mr. Martin's poor health, it is really impossible to determine a specific amount of time to have caused Mr. Martin's death through strangulation.

Evidence of this nature would have rebutted the State's expert witness testimony and any reliance thereon. Mr. Thomas is aware that the State's expert did concede on cross-examination that, when considering Mr. Martin's health issues, she could not give a specific amount of time of how long it would have taken to have caused Mr. Martin's death through strangulation. Regardless, without a defense expert to testify and confirm this reasonable hypothesis, the State was able to convince the jury that it would have taken 3-6 minutes to cause Mr. Martin's death through strangulation.

## DEFICIENT PERFORMANCE AND PREJUDICE

Defense counsel's failure to move as alleged was deficient performance that prejudiced Mr. Thomas by denying him his substantive and procedural rights to present evidence that would have rebutted the State's theory of prosecution and created reasonable doubt on whether or not Mr. Thomas's actions rose to the level of murder, effectively denying him his right to due process and a fair trial.

Had it not been for counsel's deficient performance, there exists a reasonable probability the outcome of the proceedings would have been different

by a defense expert being called, convincing the jury that it would not have taken 3-6 minutes to cause death in this case, preventing the jury from relying so heavily on the purported 3-6 minutes the State kept pounding away at during closing arguments, causing in the jury finding reasonable doubt on whether or not Mr. Thomas actually meant to cause Mr. Martin's death, resulting in an acquittal.

Accordingly, Mr. Thomas has established a legally sufficient basis for postconviction relief. As it stands, the verdict in this case has been undermined and an evidentiary hearing is warranted to resolve this claim.

(b) If you did not exhaust your state remedies on Ground One, explain why: _____
_____
_____
_____
_____
_____
_____

AO 241 (Rev. 09/17)

(c)     **Direct Appeal of Ground FIVE**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes     ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: REPRESENTED by COURT Appointed ATTORNEY

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: MOTION FOR POST-CONVICTION relIEF (FLA.R.CriM.P. RULE 3.850)

Name and location of the court where the motion or petition was filed: CIRCUIT COURT, Thirteenth Judicial CIRCUIT, Hillsborough County, 800 Twiggs Street, TAMPA, Florida 33602

Docket or case number (if you know): 13-CF-013251-A

Date of the court's decision: June 22, 2021

Result (attach a copy of the court's opinion or order, if available): SEE, EXHibit "A" Attached

_____

(3) Did you receive a hearing on your motion or petition?     ☑ Yes     ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: DISTRICT COURT, SECOND DISTRICT LAKELAND, FLorida

Docket or case number (if you know): 2D21-2178

Date of the court's decision: DECEMBER 2, 2022

Result (attach a copy of the court's opinion or order, if available): SEE, EXHibit "B" And "C"

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground FIVE    NONE

GROUND SIX: DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PRESENT AN ALTERNATIVE THEORY OF DEFENSE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

As previously alleged, the State's theory of prosecution in this case was that Mr. Thomas strangled Mr. Martin to death in a violent manner, resulting in second-degree murder. In support, the State established that Mr. Thomas had been at Mr. Martin's home on the night of the incident, and that after law enforcement arrived, Mr. Thomas returned to the scene with visible cuts, scrapes, and blood on his clothing.

Notably, evidence further established that William Hatfield had been at Mr. Martin's home that night when he witnessed Mr. Martin slap Mr. Thomas on the back of the head. Nonetheless, Mr. Hatfield claimed to have left the residence before the physical confrontation between Mr. Thomas and Mr. Martin occurred.

Additionally, the State called the medical examiner who performed the autopsy on Mr. Martin. It was the medical examiner's opinion that Mr. Martin could have lost consciousness within 10-15 seconds from being strangled. The medical examiner was also of the opinion that it would have taken between 3-6 minutes of strangulation for Mr. Martin to have actually died from strangulation.

As seen throughout closing arguments, to support a finding of guilt the State relied heavily on the medical examiner's trial testimony on the length of time it would have taken for Mr. Martin to become brain dead from Mr. Thomas's alleged strangulation. In fact, during closing arguments, the State even sat in silence for a matter of minutes to get the point across to the jury how long it would have taken

for Mr. Thomas to kill Mr. Martin through strangulation, which strongly indicated a finding of guilt to at least some degree of murder. The verdict shows the jury was convinced of guilt through the State's closing arguments and tactics.

However, prior to trial, defense counsel was aware of Mr. Thomas's account of the events. Specifically, that after an argument about Mr. Martin's daughter being racist, Mr. Martin attacked Mr. Thomas from behind and began punching him in the side of the face and head. During the melee, Mr. Thomas fought back and eventually placed his hands around Mr. Martin's neck while Mr. Martin was still swinging and hitting Mr. Thomas and clawing away at his face and head. Just moments later, Mr. Martin slowed his attack, leading Mr. Thomas to let go of Mr. Martin's neck, back away from him, and subsequently leave the home to prevent any further altercation. At the time, Mr. Thomas did not believe he had done anything to cause Mr. Martin's death. In fact, he specifically recalled only having his hands around Mr. Martin's neck for just moments.

Also prior to trial, defense counsel was aware of the fact that a witness in this case, Crystal Hatfield, had provided a police report that established she had called the police to report that her husband, state witness, William Hatfield, had confessed to her that he had "killed the man off of Pries Ave," and her husband "asked her to be his alibi and he confessed it to her, but she wouldn't do it." She also reported that her husband was going to flee to Georgia. See Exhibit A.

With all this in mind, defense counsel should have presented the alternative theory of defense of William Hatfield being the one who actually strangled Mr. Martin to death after Mr. Thomas left the scene. This theory could have easily been presented by calling Mr. Thomas to the stand to testify how his actions were limited to just moments of having his hands around Mr. Martin's neck, with no intention, knowledge, or even enough time to cause Mr. Martin's unfortunate death. This would have left the jury inquisitive about who the actual culprit could have been. Easy enough to establish. From there, defense counsel could have

called Crystal Hatfield to the stand to testify how her husband, William Hatfield had confessed to her that he was the one who actually killed Mr. Martin, and that he asked her to lie and provide him a false alibi, and, he was planning on fleeing to Georgia.

The evidence was right there for defense counsel to investigate and present this alternative theory of defense. For whatever reason, defense counsel failed to investigate or move forward with what would have been a very reasonable theory of defense under the facts of this case.

## DEFICIENT PERFORMANCE AND PREJUDICE

Defense counsel's failure to move as alleged was deficient performance that prejudiced Mr. Thomas by denying him his substantive and procedural rights to present evidence that would have created reasonable doubt on whether or not Mr. Thomas was the person who caused Mr. Martin's death, effectively denying him his right to due process and a fair trial.

Had it not been for counsel's deficient performance, there exists a reasonable probability the outcome of the proceedings would have been different by the jury finding reasonable doubt on whether or not Mr. Thomas was the person who actually caused Mr. Martin's death, resulting in an acquittal.

Accordingly, Mr. Thomas has established a legally sufficient basis for postconviction relief. As it stands, the verdict in this case has been undermined and an evidentiary hearing is warranted to resolve this claim.

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)     **Direct Appeal of Ground Six**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes   ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: REPRESENTED by COURT APPOINTED Attorney _____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: MOTION FOR POST-CONVICTION RELIEF (FLA.R.CRIM.P. RULE 3.850)

Name and location of the court where the motion or petition was filed: Circuit Court, Thirteenth Judicial Circuit, Hillsborough County 800 Twiggs Street, TAMPA, Florida 33602

Docket or case number (if you know): 13-CF-013251-A

AO 241 (Rev. 09/17)

Date of the court's decision: **June 22, 2021**

Result (attach a copy of the court's opinion or order, if available): **SEE, EXHIBIT "A" ATTACHED**

(3) Did you receive a hearing on your motion or petition? ☑ Yes ☐ No

(4) Did you appeal from the denial of your motion or petition? ☑ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: **DISTRICT COURT, SECOND DISTRICT LAKELAND, FLORIDA**

Docket or case number (if you know): **2D21-2178**

Date of the court's decision: **December 2, 2022**

Result (attach a copy of the court's opinion or order, if available): **See, EXHIBIT "B" AND "C"**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground **SIX** **NONE**

GROUND SEVEN: MR. THOMAS SHOULD BE ENTITLED TO A NEW TRIAL BASED ON THE CUMULATIVE EFFECT OF INEFFECTIVE ASSISTANCE OF COUNSEL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

When a movant raises a claim of cumulative effect error, the courts are required to review each claim individually and then consider the cumulative effect of the claims under the totality of circumstances. In the instant case, Mr. Thomas contends that two or more of the foregoing claims of ineffective assistance of

counsel establish the deficiency and prejudice threshold of *Strickland v. Washington*, 455 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Upon such review, this Court should find that counsel's deficient performance and ensuing prejudice effectively denied Mr. Thomas his right to effective assistance of counsel, due process, and a fair trial as guaranteed under the Sixth and Fourteenth Amendments to the U.S. Constitution.

This is a legally sufficient basis for postconviction relief. See, *Urquhart v. State*, 676 So. 2d 64 (Fla. 1st DCA 1996) (establishing the cumulative effect of numerous errors or omissions in a counsel's performance may constitute prejudice.

Citing, *State v. Gunsby*, 670 So. 2d 920 (Fla. 1996); *Cherry v. State*, 659 So. 2d 1069 (Fla. 1995); *Hervey v. Dugger*, 656 So. 2d 1253 (Fla. 1995). As it stands, the verdict in this case has been undermined and an evidentiary hearing is warranted on this claim.

(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 241
(Rev. 01/15)

(c)     **Direct Appeal of Ground** SEVEN :

    (1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

    (2) If you did not raise this issue in your direct appeal, explain why: REPRESENTED by court Appointed

Attorney

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒ Yes    ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: MOTION FOR POSTCONVICTION RELIEF (FLA.R.CrIM, P.RulE 3.850)

    Name and location of the court where the motion or petition was filed: Circuit court, Thirteenth JuDiciAL

Circuit, Hillsborough County 800 Twiggs Street TAMPA Florida 33602

    Docket or case number (if you know): 13-CF-013251-A

    Date of the court's decision: June 22, 2022

    Result (attach a copy of the court's opinion or order, if available): See, Exhibit "A" AttAched

    (3) Did you receive a hearing on your motion or petition?    ☒ Yes    ☐ No

    (4) Did you appeal from the denial of your motion or petition?    ☒ Yes    ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☒ Yes    ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: District court, SEcond District

LAKELAND, FloridA

    Docket or case number (if you know): 2D21-2178

    Date of the court's decision: December 2, 2022

    Result (attach a copy of the court's opinion or order, if available): SEE, Exhibit "B" And "C"

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241 (Rev 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground SEVEN :    NONE _____

_____

GROUND EIGHT: DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE   BY
USING INADEQUATE STRATEGY ATTACK

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Prior to, and during trial, Mr. Thomas discussed some defense strategies with defense counsel. Mr. Thomas wanted to take the stand and testify in his own behalf to tell the jury his side of the story (version of events) and exactly how the incident occurred.

There was no eye-witnesses.

However, defense counsel unreasonably led Mr. Thomas to believe his testimony was unnecessary, although the defendant's testimony was the only evidence to support his version of events when considering the verdict under review. In fact, Mr. Thomas state that he would have testified to had he been properly advised that his testimony was vital in establishing a defense in this case, Mr. Thomas states that he would have told the jury that on the night or the incident, he was at Mr. Martin's home drinking alcoholic beverages and hanging out.

During the evening, Mr. Martin's daughter stopped in for a few minutes. Her demeanor and comments led Mr. Thomas to think she was racist. When she left, Mr. Thomas asked Mr. Martin about his daughter. Mr. Thomas actually asked Mr. Martin if he had raised his daughter to be racist. Mr. Martin said, "No." Mr. Thomas returned with, "Well, she acts like a racist bitch."

From there the discussion became heated back and forth between Mr. Thomas and Mr. Martin. Suddenly, Mr. Martin attacked Mr. Thomas from behind began punching Mr. Thomas in the side of the face and head. Mr. Thomas fell to the ground and ended up on his back while Mr. Martin was in a rage, savagely punching and clawing at him.

Mr. Thomas did his best at trying to fend Mr. Martin off and stop the attack.

The two rolled around until Mr. Thomas was able to get on top of Mr. Martin and slow him down a little, Mr. Thomas pleaded with Mr. Martin to stop and let go so he could leave. It appeared Mr. Martin was lightening up on his attack, leading Mr. Thomas to ease off and start to get up. However, as soon Mr. Thomas began getting up, Mr. Martin again proceeded with his ruthless attack, once again leading Mr. Thomas to try to fend off from being punched and clawed. Ultimately, Mr. Thomas fought back because he was afraid and reasonably in fear of his life, and Mr. Martin would not let up (stop) and let him leave. Mr. Martin was still swinging and hitting Mr. Thomas and clawing away at his face and head.

Moments later, Mr. Martin slowed his attack again, leading Mr. Thomas to slack off, back away from Mr. Martin, and subsequently leave the home to prevent any further altercation. At the time, Mr. Thomas did not believe he had done anything to cause Mr. Martin's death Mr. Martin was alive when Mr. Thomas left. He was simply in reasonable fear for his life, or at least the danger of great bodily harm being inflicted upon himself.

<u>Ineffective Assistance of Counsel</u>

STANDARD OF REVIEW

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, <u>540 U.S. 1</u>, 5, 124 S. Ct. 1, <u>157 L. Ed. 2d 1</u> (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, <u>539 U.S. 510</u>, 521, 123 S. Ct. 2527, <u>156 L. Ed. 2d 471</u> (2003), and <u>Strickland v. Washington</u>, <u>466 U.S. 668</u>, 687, 104 S. Ct. 2052, <u>80 L. Ed. 2d 674</u> (1984)).

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been [1]different.

---

[1] To show prejudice under Strickland, a defendant must demonstrate that counsel's errors are so serious as to deprive him of a trial whose result is unfair or unreliable, id., at 687, 80 L Ed 2d 674, 104 S Ct 2052, not merely that the outcome would have been different. Unfairness or unreliability does not result unless counsel's ineffectiveness deprives the defendant of a substantive or procedural right to which the law entitles him.

The Defendant states that Counsel's performance was unreasonable in light of the circumstances and Counsel was not functioning as the "Counsel" guaranteed the Defendant by the Sixth Amendment.

Counsel's errors were serious as to deprive the Defendant of a fair trial, a trial whose result is reliable, which has resulted from Counsel's incompetence and a breakdown in the adversary process that deprived the Defendant of a substantive and/or procedural right to which the law entitles him.

Had it not been but for these unreasonable omissions and errors by Counsel the Defendant would have testified to his pro offered testimony which is included in this motion there exist a reasonable probability or not guilty verdict.

(b) If you did not exhaust your state remedies on Ground eight explain why:

_____

_____

_____

(c)    Direct Appeal of Ground eight:

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: REPRESENTED by court appointed Attorney

_____

(d)    Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: MOTION FOR POSTCONVICTION relief (FLA. R.CRIM.P. Rule 3.850)

Name and location of the court where the motion or petition was filed: Circuit court Thirteenth Judicial Circuit, Hillsborough county 800 twiggs street tAMPA Florida 33602

Docket or case number (if you know): 13-CF-013251-A

Date of the court's decision: June 22, 2021

Result (attach a copy of the court's opinion or order, if available): SEE, EXhibit "A", Attached

(3) Did you receive a hearing on your motion or petition?                    ☑ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?               ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: District court, SECOND District LAKELAND, FLOridA

Docket or case number (if you know): 2D21-2178

Date of the court's decision: DECEMber 2, 2022

Result (attach a copy of the court's opinion or order, if available): SEE, EXhibit "B" And "C", Attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 01/15)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground eight. **NONE**

---

GROUND NINE: DEFENDANT'S CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS DEFINED IN STRICKLAND V WASHUNGTON, 466 U.S. 668, 8O L.ED 2D 674, 104 S. CT. 2052 WAS VIOLATED

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner is in unlawful custody of the Respondent.

Petitioner's custody is in violation of the 5th, 6th, 14th Amendment U.S. Constitution.

Defendant/Petitioner states that he was denied his constitutionally guaranteed right to the effective assistance of Counsel, as defined in Strickland, when his trial lawyer(s) failed to investigate and conduct an independent examination of the facts, circumstances, pleadings, and law involved and correctly inform Defendant of the law and facts relevant to plausible options in this case.

Defendant states that the proper standard for judging an attorney performance is that of reasonably effective assistance, considering all the circumstance(s). See Strickland supra.

To establish ineffective assistance of Counsel, the Defendant must prove: (1) That Counsel's performance fell below an objective standard of reasonableness, 466 U.S. at 688, 89 L.Ed. 2d 674, 105 S.Ct. 2052; and (2) That the deficient performance prejudiced the defense, which requires a showing that there is a reasonable probability that, but for Counsel's unprofessional errors, the result of the proceeding would have been different, id. at 694, 80 L.Ed. 2d 675, 104 S.Ct 2052

Because the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court," The Supreme Court precedent "dictated" that the Florida Courts apply this test in entertaining Defendant/Petitioner ineffective-

assistance claim. See *Teague v. Lane*, 489 U.S. 288, 301, 103 L.Ed. 2d 334, 109 S.Ct 1060.

Defendant/Petitioner states that he is entitled to relief because *Strickland* provides sufficient guidance for resolving virtually all ineffective-assistance claims, and although there are a few situations in which the overriding focus on fundamental fairness may affect the analysis, (see *Strickland*, 466 U.S., at 692, 80 L. Ed 2d 674, 104 S. Ct. 2052, cases such as *Lockhart and Nix v Whiteside*, 475 U.S. 157, 89 L. Ed 2d 123, 106 S. Ct. 988,) do not justify a departure from a straightforward application of *Strickland,* when Counsel's ineffectiveness deprives the Defendant of a substantive or procedural right to which the law entitles him.

Here, Defendant/Petitioner states that he had a constitutionally protected right under the Sixth Amendment U.S. Constitution , "In all criminal prosecutions to a <u>speedy</u> and <u>public trial</u> by an <u>impartial jury</u> of the <u>State and district</u> wherein the crime shall have been committed, which district shall have been previously ascertained by law, and <u>to be informed of the nature and cause of the accusation</u>. To be <u>confronted with the witnesses against him</u>. To have <u>compulsory process for obtaining witnesses</u> in his favor, <u>and to have the Assistance of Counsel for his defense.</u>"

Moreover, the Supreme Court has agreed that the Sixth Amendment imposes on Counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions, and informed legal choices can be made only after investigation of options.

The Court observed that Counsel's investigatory decisions must be assessed in light <u>of the information known at the time of the decisions</u>, not in hindsight,

and that "[t]he amount of pretrial investigation that is reasonable defines precise

measurement.

　　　　Strickland cautions that "strategic choices made after through

investigation of law and facts relevant to plausible options are virtually

unchallengeable; and strategic choices made after less that complete investigation

are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigations" 466 U.S. at 690-91.

The test has nothing to do with what the best lawyers would have done. Nor

Is the tests even what most good lawyers would have done. We ask only whether

Some reasonable lawyer at trial could have acted, in the circumstances, as

Defense Counsel acted at trial.....We are not interested in grading lawyers'

Performances; we are interested in whether the adversarial process at trial, in fact,

worked adequately. White v Singletary, 972 F 2d 1218, 1220-21 (11 Cir. 1992),

Accord  Chandler  v United States 218 F 3d 1305, 1313 ( 11th Cir. 2000) ( T0

state the obvious: the trial lawyers, in every case, could have done something

more or something different. So, omissions are inevitable.... [T]he issue is not

what is possible or what is prudent or appropriate, but only what is

constitutionally compelled")(en banc)(quoting Burger v Kemp 483 U.S.

766,794,107 S. Ct. 3114, 97 L. Ed. 2d 683 ( 1987) See also Jones v Barnes 463

U.S.745,751,103 S. Ct. 3308, 77 L. Ed 2d 987( Counsel has no duty to raise a frivolous claim)

<u>In other words</u>, Counsel has a duty to make reasonable investigations or to

Make a reasonable decision that makes particular investigations unnecessary.

      Additionally, and in **<u>Notification to the District Court</u>** it stated that all aforesaid grounds within this petition (Grounds One through Nine), (1). resulted in a decision that was contrary to, or  involved an unreasonable application of, clearly established Federal  law, as determined by the Supreme Court of the United States, or (2). resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

41

42

AO 241 (Rev 09/17)

(b) If you did not exhaust your state remedies on Ground **NINE** explain why:

_____

_____

_____

(c) **Direct Appeal of Ground**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: Represented by court Appointed Attorney

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion For Post Conviction Relief (Fla. R. Crim. P. Rule 3.850)

Name and location of the court where the motion or petition was filed: Circuit Court Thirteenth Judicial Circuit Hillsborough County 800 Twiggs Street Tampa Florida 33602

Docket or case number (if you know): 13-CF-013251-A

Date of the court's decision: June 22, 2021

Result (attach a copy of the court's opinion or order, if available): See, Exhibit "A" Attached

_____

(3) Did you receive a hearing on your motion or petition?    ☑ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: District Court, Second District Lakeland, Florida

Docket or case number (if you know): 2D21-2178

Date of the court's decision: December 2, 2022

Result (attach a copy of the court's opinion or order, if available): See, Exhibit "B" And "C"

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground **NINE:**    NONE

_____

_____

13.      Please answer these additional questions about the petition you are filing:

     (a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes      ☐No

            If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

     (b)     Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: <u>All nine asserted grounds have been presented to the state's highest court.</u>_____

14.      Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?     ☐ Yes     ☑ No

       If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

15.      Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     ☐ Yes     ☑ No

       If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

_____

_____

16    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you
       are challenging:

       (a)  At preliminary hearing: <u>Unknown</u>

       (b)  At arraignment and plea:

       (c)  At trial:  E. BEArdSLey

       (d)  At sentencing: Elizabeth A. Beardsley

       (e)  On appeal: Howard L. Diming, II. ,Public Defender, Bartow, Fla.

       (f)  In any post-conviction proceeding:  Jorge   chnieLA

       (g)  On appeal from any ruling against you in a post-conviction proceeding: Robert  Earl Thomas, pro se

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

              ☐ Yes          ☑No

       (a)     If so, give name and location of court that imposed the other sentence you will serve in the future:


       (b)     Give the date the other sentence was imposed:

       (c)     Give the length of the other sentence:

       (d)     Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the
                future?                      ☐  Yes    ☑  No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the
       one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
Rev. (01/15)

45

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
Rev. (01/15)

    (2)      The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, Petitioner asks that the Court grant the following relief: <u>For office of Attorney General to file response to petitioner's</u>

<u>petition and etc.; Grant evidentiary hearing; Grant a new trial; immediately release from incarceration.</u>

<u>or, any other relief to which petitioner may be entitled.</u>

 

_____
                        Signature of Attorney (if available)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ___3ʳᵈ___ day of ___April___, 2023.

Executed (signed) on (date).

_____
                        Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition

_____

_____

_____

_____